STATE OF MINNESOTA, *ex rel.* Charles A. Parker, *vs.* INDEPENDENT SCHOOL-DISTRICT OF THE VILLAGE OF NEWPORT.

January 14, 1890.

Village—School-District.—A village constituting a part of an independent school-district is not authorized, at its own election, to withdraw therefrom, and to organize as a separate independent school-district.

Application for writ of *quo warranto.*
*S. C. Briggs,* for relator.
*Henry C. James,* for respondent.

DICKINSON, J. This is a proceeding, in the nature of *quo warranto,* to test the question whether the village of Newport has been legally organized into a separate and, as defined by statute, independent

school-district. Our present decision is to be made upon a motion to quash the proceedings; this being in the nature of a demurrer to the information. The following facts, set forth in the information, are to be taken as true: In August, 1889, school-district No. 36, in Washington county, included the organized village of Newport, with some other territory. In that month this school-district, by its own proper action, was legally organized as an independent school-district, designated the "Independent School-District of St. Paul Park," and legally elected a board of education therefor. In the following month, September, the electors of the village of Newport assumed, by their own action alone, at a village meeting and election, to organize the village into a separate independent school-district; and these individual respondents were elected in that district, so organized, as a board of education. The only question now before us is whether the statute authorized this action of the village. Section 94, c. 36, Gen. St. 1878 (amended in 1881 in a particular not here important) provides that "any city, town, village, township, or school-district now or hereafter organized may be organized into and established as an independent school-district, in the manner and with the powers hereinafter specified: provided, first, that this title shall not apply to any township or school-district containing less than five hundred inhabitants, unless said school-district consists, in whole or in part, of an incorporated city, town, or village." The statute then provides how an independent school-district is to be organized. This is to be by a majority vote of the electors, "in the contemplated district," in favor of such organization, and by the subsequent election of a board of education. No question is raised as to the power of school-district No. 36, of Washington county, embracing the village of Newport, to organize as an independent school-district, as it did do; and we assume that the statute authorized this. Such a proceeding seems to be within the very letter of the statute. But the case is somewhat different when, the Independent School-District of St. Paul Park having been thus established, a part of that district, the village of Newport, assumed, of its own volition, to withdraw from that district, and to establish for itself a separate school organization. Such a power, to be exercised at the mere arbitrary will of a part of the dis-

trict, without regard to the interests of the remainder, the latter being given no voice in the matter, should not be upheld, unless it is plainly conferred by the statute.   In the division of school-districts, interests of great importance to all the people of the district are likely to be involved, which, for obvious reasons, ought not to be subject to the mere arbitrary power of one section or part of the district.   In many ways the withdrawal of a part of a district is likely to be a matter of concern, not merely to that part, but as well to that which remains.   Such changes are necessarily always a matter of interest to the whole district.   Thus, not to mention other things, the remaining portion of the district may be unable, from its limited area, population, and financial ability, to maintain a separate organization for school purposes; or the district, as originally existing, may be burdened with a debt which in justice should be borne by the whole district.   Is it within the power of a part of the district, of its own mere volition, to secede, create a corporate legal organization for itself, and shift the entire burden of debt upon the remaining portion of the district, which is given no voice or hearing in a matter so largely affecting its interests?   The statute should not be construed as conferring such a power, unless that intention is very clearly manifest.   It is to be observed that such a course of proceeding is contrary to the general policy of the state, as expressed in the provisions of the general law relating to the division or change of boundaries of common school-districts.   By the terms of the statute relating to that subject, the formation of new school-districts, the change of boundaries, or the uniting of districts, can be accomplished only by the action of the county commissioners, and with the approval of the county superintendent, upon the petition of a majority of the freeholding voters residing in each district to be affected thereby, and after notice and hearing in the manner prescribed.   Chapter 36, Gen. St. 1878, § 12 *et seq.*   In view of this law, framed with regard to the interests of all who may be affected by such proceedings, it would excite surprise to find that, in respect to independent school-districts, any city, town, or village comprising a part of the district has an arbitrary, unguarded power such as was exercised in this case.

Again, it is apparent that a construction of the statute sustaining the action of the village, in this instance, would place it in the power of a village, town, or city constituting a part of an independent school-district to bring about a condition of things opposed to the obvious purposes of the law. The statute which we have recited does not authorize the formation of an independent district, with less than 500 inhabitants, unless it consists in whole or in part of an incorporated city, town, or village. Good reasons for this may easily be conjectured. That part of this district remaining after the withdrawal of the village would not probably (and in any such case it might not) embrace any incorporated city, town, or village; and, by reason of that withdrawal, there might, in any such case, remain in that part of the district less than 500 inhabitants. Still, it would either retain its already existing independent organization, contrary to the obvious intention of the statute, or else it would become wholly disorganized as a school-district, by the arbitrary action of a part only of the original district, acting only for its own interests. The statute is not necessarily to be construed as authorizing the withdrawal and organization in question, nor, for reasons to which we have referred, should it be so construed. Whether or not any city, town, or village, *which constituted a part of a common school-district,* is authorized, at its own mere election, to withdraw from that district, and to establish itself into a separate and an independent school-district, may well be doubted. But that is not a question here presented. Such was not the case when the Independent School-District of St. Paul Park was organized. That was the organization of a common school-district into an independent district; and all of the people interested in the proceeding participated in it upon equal grounds. But, even if such an arbitrary withdrawal of a part of an entire common school-district is authorized by the statute, the statute falls short of expressing the right of a part of an independent district, once established, to secede in the same manner, and to organize as another independent district. If the power exists in the first instance, it extends no farther. Our conclusion is that upon the facts set forth in the petition the proceedings through which, as it is

said, the respondent's organization was effected were without legal authority. The motion to dismiss is denied. The respondents may answer to the facts alleged within 10 days after notice of this decision.